IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**JEFFREY FRIEND, et al.,**

        Plaintiffs,

    v.                                    Civil Action 2:18-cv-198
                                                      Magistrate Judge Jolson

**NEW LEXINGTON TREE FARM,**
**LLC, et al.,**

        Defendants.


**OPINION AND ORDER**

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docs. 15–16), is before the Court on Defendant Perry County Sheriff William R. Barker and Deputy Cody Palmer's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 27). For the reasons that follow, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. More specifically, the claims against Sheriff Barker are dismissed, but the claims against Deputy Palmer are not.

**I.    BACKGROUND**

Plaintiffs Jeffrey and Amy Friend own approximately 24.12 acres of real property located in Saltlick Township, Perry County, Ohio (the "Friend Property"). (Doc. 19 at ¶ 13). Plaintiffs allege that, on or about October 4, 2017, Defendants New Lexington Tree Farm, LLC ("NLTF") and Ohio Mulch Supply, Inc. ("Ohio Mulch") entered the Friend Property, constructed a road through it, removed and damaged trees, and left a permanent drive ("the NLFT/Ohio Mulch driveway"). (*Id*. at ¶ 20).

Plaintiffs further allege that Mr. Friend alerted Defendant Perry County Sheriff's office of the trespass as it was occurring, and Defendant Perry County Sheriff's office promptly dispatched law enforcement to the Friend Property. (*Id*. at ¶ 26). Defendant Deputy Cody Palmer arrived at the Friend Property before Mr. Friend, who was en route from Columbus, Ohio. (*Id*. at ¶ 27). Plaintiffs allege that, upon Mr. Friend's arrival at the property:

> The Deputy advised [him] that NLTF/Ohio Mulch was authorized to cross Plaintiffs' Property, that the Deputy had confirmed with the Perry County Engineer that the opening was approved, and that Ohio Mulch had posted a bond. The Deputy again advised Plaintiff Jeffrey Friend, several times, that any attempt to interfere with NLTF/Ohio Mulch would result in Plaintiff Jeffrey Friend's arrest.

(*Id*. at ¶ 29). According to Plaintiffs, the NLTF/Ohio Mulch driveway was built solely for private use but was constructed under the protection and sanction of the Perry County Sheriff. (*Id*. at ¶¶ 47–48). More generally, Plaintiffs allege that the Perry County Sheriff engaged in a custom, practice, or policy of allowing trespasses on the Friend Property and on other private land. (*Id*. at ¶¶ 55–56).

Based upon those allegations, Plaintiffs filed the instant lawsuit against Defendants NLTF, Ohio Mulch, Perry County Sheriff William Barker (in his official capacity), Deputy Cody Palmer (in his personal capacity), and Saltlick Township Trustees. (*See id*.). Plaintiffs set forth twelve claims in their Amended Complaint: a § 1983 claim for a violation of their Fifth Amendment rights (Count I), a § 1983 claim for a violation of their Fourteenth Amendment substantive due process rights (Count II), a § 1983 claim for a violation of their Fourteenth Amendment procedural due process rights (Count III), a claim for trespass (Count IV), a claim for conversion (Count V), a claim for nuisance (Count VI), a petition for the recovery of real property under Ohio Revised Code § 5303.03 (Count VII), a claim for injury to trees under Ohio Revised Code § 901.51 (Count VIII), a claim for civil conspiracy (Count IX), a claim for slander of title (Count X), a claim for

declaratory judgment under 28 U.S.C. § 2201 (Count XI), and a claim for declaratory judgment under 28 U.S.C. § 2721.02 (Count XII). Relevant here, Plaintiffs allege that Sheriff Barker authorized trespass on the Friend Property and other properties (Doc. 19 at ¶¶ 54–56), and that Sheriff Barker and Deputy Palmer effected a taking of Plaintiffs' real and personal property in violation of their constitutional rights. Plaintiffs plead those allegations in Counts 1–3. (*See, e.g.*, Doc. 19 at 15). Plaintiffs also seek declaratory judgment against all named defendants in this action. (*Id.* at 14–15).

On July 5, 2018, Defendants Sheriff Barker and Deputy Palmer ("Defendants") filed a Motion to Dismiss. (Doc. 27). That Motion is now ripe for resolution. (*See* Doc. 32 (opposition), Doc. 34 (reply)).

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id*. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement"

3

rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

### A. Sheriff Barker

Plaintiffs have filed this lawsuit against Defendant Barker in his official capacity. (Doc. 19 at 3). Such a lawsuit is "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). In other words, Plaintiffs' lawsuit against Defendant Barker in his official capacity is treated as a lawsuit against the Perry County Sheriff's Office. *See Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.").

To state a claim against the Perry County Sheriff's Office, Plaintiffs must demonstrate that it had a policy or custom which caused them to suffer the alleged constitutional deprivation. *See Hurst v. Fentress Cty. Tenn.*, No. 99-5718, 2000 WL 1206520, at *2 (6th Cir. Aug. 18, 2000) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363–64 (6th Cir. 1993)). "A 'policy' is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Shorts v. Bartholomew*, 255 F. App'x 46, 57 (6th Cir. 2007). Alternatively, a "custom" "must 'be so permanent and well settled'" that it has the "force of law" and needs no formal approval. *Doe v. Claiborne Cty.*, 103 F.3d 495, 507–08 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). Thus,

the Perry County Sheriff's Office may be liable only if there is "a direct causal link" between the policy or custom and the alleged constitutional deprivation. *Hurst*, 2000 WL 1206520, at *2. It may not be held liable based on *respondeat superior*. *Monell*, 436 U.S. at 691.

In the Amended Complaint, Plaintiffs allege that Sherriff Barker was on notice that NLTF/Ohio Mulch and others had unilaterally "opened" unknown, closed, or nonexistent township roads; authorized trespass on the Friend Property; and authorized similar trespasses on other properties. (Doc. 19 at ¶¶ 54–56). As an initial matter, Plaintiffs' allegations concerning similar trespasses on other properties are "threadbare." *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. 663–64. Indeed, Plaintiffs summarily allege that Sheriff Barker "made it his custom, practice, or policy" to authorize trespass on the Friend Property and similar trespasses on other properties. (Doc. 19 at ¶¶ 55–56). But Plaintiffs offer no written policy authorizing such an action nor do they provide any example of Sheriff Barker's "similar trespasses on other properties."

The Court thus reads Plaintiffs' claim of a policy or custom as based solely on the Perry County Sheriff's Office's alleged authorization of trespass on the Friend Property. But a single unconstitutional action generally is insufficient to sustain a claim under § 1983. *See, e.g.*, *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996) ("There is an analytical distinction between being deliberately indifferent as to one particular incident, and having a 'policy' of always being deliberately indifferent to unconstitutional actions."); *Holzemer v. City of Memphis*, No. 06-2436, 2008 WL 8954888, at *5 (W.D. Tenn. Dec. 31, 2008), *aff'd* 621 F.3d 512 (6th Cir. 2010) ("A plaintiff cannot state a claim relying on a single instance of alleged misconduct"); *Linthicum v. Johnson*, No. 1:02–CV–480, 2006 WL 1489616, at *30 (S.D. Ohio May 26, 2006) ("A plaintiff seeking to establish liability under an 'unofficial policy or custom'… theory must typically show more than a single instance of unconstitutional conduct.").

The Court, in evaluating a motion to dismiss, is "limited to the complaint and the exhibits attached thereto." *Jones v. Bergman*, No. 1:08–cv–599, 2009 WL 3270003, at *2 (W.D. Mich. Oct. 8, 2009) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). With only one alleged trespass, Plaintiffs' Amended Complaint does not provide a sufficient basis to establish that the Perry County Sheriff's Office had a policy or custom that directly caused Plaintiffs' alleged constitutional deprivation. *See Hurst*, 2000 WL 1206520, at *2. Accordingly, the Motion is **GRANTED**, and the Complaint is **DISMISSED** as to Sheriff Barker. Since the Court grants dismissal on this basis, the Court need not reach Sheriff Barker's immunity argument pursuant to Ohio Revised Code Chapter 2744.

### B. Deputy Palmer

Plaintiffs have filed this lawsuit against Deputy Palmer in his personal capacity, specifically alleging that his actions amounted to a taking of property in violation of Plaintiffs' substantive due process rights in the Fifth and Fourteenth Amendments. (Doc. 19 at ¶¶ 11, 58). In their Motion to Dismiss, Defendants argue that, even if there was a taking in this case, the claim is not ripe because Plaintiffs "failed to follow the procedure proscribed by relevant case law." (Doc. 27 at 9). Defendants make the same argument in seeking dismissal of Plaintiffs' due process claims. (*Id.*) Plaintiffs respond that because the taking was for a "private use," they are not subject to ripeness requirements. (Doc. 32 at 9). Alternatively, Deputy Palmer argues that he is entitled to qualified immunity.

#### 1. Federal Takings Claim (Count I)

Up front, the Court notes that Plaintiffs have brought takings claims under the federal and Ohio Constitutions. The analysis of those claims differs. *See, e.g.*, *City of Norwood v. Horney*,

853 N.E.2d 381 (Ohio 2006). Here, however, Defendants have made substantive arguments only as to the federal takings claim. As such, the differences can be put aside for now.

"The Takings Clause of the [federal] Constitution prohibits the taking of private property for public use without due process of law and just compensation." *Kruse v. Vill. of Chagrin Falls, Ohio* 74 F.3d 694, 700–01 (6th Cir. 1996) (citing U.S. Const. amend. V). The Clause has a public-use component, which requires the government to show that the taking was for a public purpose. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 230 (1984). Meeting this burden is not onerous—the government must simply demonstrate that the taking is "related to a conceivable public purpose." *Id*. If, however, the government cannot point to a "conceivable public purpose," the taking is characterized as a private-use taking. *See id*. at 241.

Procedurally, a Takings Clause claim generally is not ripe until "(1) the plaintiff receives a final decision from the government; and (2) the plaintiff has sought compensation through established state procedures." *Cornerstone Developers, Ltd. v. Sugarcreek Twp.*, No. 3:15–CV–93, 2015 WL 6472260, at *4 (S.D. Ohio Oct. 27, 2015) (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). More specifically, "[i]n Ohio, a property owner alleging a physical or regulatory taking must file a mandamus action in state court to compel public authorities to institute appropriation proceedings." *Id.* (citing Ohio Rev. Code §§ 163.01–163.62). Until those proceedings are complete and there has been a decision denying the property owner just compensation, "there is no constitutional injury and a Takings Clause claim is not ripe." *Id*. (citing *River City Capital, L.P. v. Bd. of Cty. Comm'rs, Clermont Cnty., Ohio*, 491 F.3d 301, 306 (6th Cir. 2007).

In determining whether the public-use requirement has been satisfied, the court plays "'an extremely narrow'" role. *Midkiff*, 467 U.S. at 240 (quoting *Berman v. Parker*, 348 U.S. 26, 32

7

(1954)). Importantly, a court may "not substitute its judgment for a legislature's judgment as to what constitutes a public use 'unless the use be palpably without reasonable foundation.'" *Id*. at 241 (quoting *United States v. Gettysburg Elec. R. Co.*, 160 U.S. 668, 680 (1896)). Under this deferential test, "[v]ery few takings will fail to satisfy [the public-use] standard." *Montgomery v. Carter Cty., Tennessee*, 226 F.3d 758, 765–66 (6th Cir. 2000) (noting that the examples of private-use takings "tend to be highly implausible hypotheticals"). However, there are "rare real-life example[s]" of private-use takings wherein the government cannot demonstrate a rational relationship between the taking and some public purpose. *See id*. at 766. "Private-use takings, rare as they may be, are unconstitutional regardless of whether just compensation is paid." *Id*. This is because "[a] person whose property is confiscated for a strictly private use need not settle for 'just compensation.'" *Id.* at 767. Consequently, a plaintiff alleging a private-use taking is not required to show just compensation or otherwise satisfy the *Williamson County* ripeness requirements. *See id*; *see also Nw. Ohio Properties, Ltd. v. Lucas Cty.*, No. 3:11-CV-1867, 2015 WL 3968761, at *4 (N.D. Ohio June 30, 2015) ("On the other hand, when a party claims their property is taken for a strictly private use, state eminent domain proceedings are unnecessary to determine whether there has been a constitutional violation.").

Here, the parties dispute the taking's purpose. Plaintiffs contend that the alleged taking was for a strictly private use and, consequently, ripeness requirements do not apply. (Doc. 32 at 9). In support, Plaintiffs allege: (1) the "Driveway serves no public purpose or use, and is not open to the public for use"; (2) "NLTF/Ohio Mulch have installed 'No Trespassing' signs along the NLTF/Ohio Mulch Driveway"; (3) the "Driveway has never been used by any member of the public whatsoever except NLTF/Ohio Mulch and their agents"; and (4) the "Driveway was constructed for the exclusive, private use of NLTF/Ohio Mulch." (Doc. 19 at ¶¶ 43–44, 48).

8

For legal support, Plaintiffs rely on the Sixth Circuit's decision in *Montgomery v. Carter County, Tennessee*. (*See* Doc. 32 at 10–11). *Montgomery* involved a "rare real-life example" of a private-use taking, where the government designated a private driveway as a public road. *See* 226 F.3d at 762–63. In that case, the plaintiff alleged that the county designated her driveway as a public road for a strictly private purpose—so the postmaster could deliver mail to a neighboring home. *Id.* at 763. Relevant here, the Court held that because the plaintiff's "sole claim [was] that she was dispossessed of property for a private use," she was not required to "vet her claims in state proceedings[.]" *Id.* at 767. In other words, because the plaintiff sufficiently asserted that there was no public purpose for the taking, her claim could proceed.

Defendants respond that *Montgomery* is inapposite because the construction on the Friend Property was done to "reopen Salt Lick Township Road 221, which existed prior to the alleged taking." (Doc. 34 at 7). Put simply, Defendants claim that Salt Lick Township Road 221 is a public road. Plaintiffs dispute this assertion (*see e.g.*, Doc. 32 at 12), and expressly seek declaratory judgment that no public roads or easements run over their real property between County Road 12 and the Pike Township-Saltlick Township border. (Doc. 19 at ¶ 98).

At this point, the Court notes what is *not* in the record. Ohio Revised Code Chapter 5571 governs the ways in which a Board of Township Trustees may construct and improve roads. Notably, Defendants do not provide the Court with facts regarding Saltlick Township Road 221 of which the Court could take judicial notice. For example, none of the pleadings or briefing refer to an administrative or regulatory proceeding related to the construction or reopening of Saltlick Township Road 221. Instead, Defendant rely on Ohio Revised Code 163.01 (H)(2), which states that Ohio law presumes "roads" are built for a public purpose. *See* Ohio Rev. Code 163.01 (H)(2). But that is the rub—Plaintiffs allege that "Saltlick Township Road 221" is not a road at all; it's

9

just a driveway. At this stage, the Court accepts, as true, Plaintiffs' well-pleaded allegations that Saltlick Township Road 221 is not a reopened public road.

Defendants also argue that Plaintiffs failed to allege that the "No Trespassing" signs were placed by law enforcement. (Doc. 27 at 12). Similarly, Defendants argue that "[if] the road was opened under the auspices of reopening Township Road 221, and subsequent acts taken by private actors (*i.e.* Defendants New Lexington Tree Farm, LLC and Ohio Mulch) closed the road to the public, such acts cannot be attributed to the Perry County Sherriff or Deputy Palmer." (*Id.* at 12). The Court finds these arguments peculiar. If the road is public, why have private entities posted "No Trespassing" signs excluding others?

To be sure, Plaintiffs must clear a high threshold to succeed on a private-use claim. As this case progresses, Defendants might be able to show a public use for Township Road 221. At this stage, however, the Court finds a plausible private-use claim, and Plaintiffs' takings claim survives. *See Montgomery*, 226 F.3d at 767–68; *see also Nw. Ohio Properties, Ltd.*, 2015 WL 3968761, at *4.

### 2. Due Process Claims (Counts II and III)

Plaintiffs also assert substantive and procedural due process claims ancillary to their Takings Clause claim. (*See* Doc. 19, Counts II and III). The Sixth Circuit permits a plaintiff to assert substantive and procedural due process claims in addition to a Fifth Amendment takings claim. *See Montgomery*, 226 F.3d at 768 (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1215 (6th Cir. 1992)); *but see, e.g.*, *Armendariz v. Penman*, 75 F.3d 1311, 1323-27 (9th Cir. 1996) (en banc) ("Since the Takings Clause provides an explicit textual source of constitutional protection against private takings, the Fifth Amendment (as incorporated by the Fourteenth), not

the more generalized notion of substantive due process, must be the guide in reviewing the plaintiffs' claim of a private taking.") (internal quotation marks and citations omitted).

That does not mean, however, that a plaintiff may assert due process claims in order to skirt the ripeness requirements of the Takings Clause. *See Montgomery*, 226 F.3d at 769; *see also Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Substantive and procedural due process claims ancillary to a takings claim are also subject to the same ripeness requirements as the takings claim. *See Montgomery*, 226 F.3d at 769 (citing B*igelow v. Michigan Dep't of Nat. Resources*, 970 F.2d 154, 160 (6th Cir. 1992) (finding that plaintiffs could not "circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.")). In other words, Plaintiff's takings claim and due process claims rise and fall together. Here, because Plaintiffs sufficiently allege a private-use taking, their substantive and procedural due process claims are also ripe for review. *See id*. at 770 (finding that because plaintiff asserted a private-use taking, the *Williamson County* ripeness requirements did not apply and therefore there was no concern that plaintiff "attempt[ed] to artfully plead as a substantive due process claim what is in fact a takings claim that is not ripe for adjudication in federal court").

### 3. Qualified Immunity

Deputy Palmer asserts the affirmative defense of qualified immunity. (*See* Doc. 27 at 8). "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two competing interests— "the need to hold public officials accountable when they exercise power irresponsibly and the need

11

to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Richko v. Wayne Cty.*, 819 F.3d 907, 914 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In determining whether Defendant Palmer is entitled to qualified immunity, the Court considers (1) whether Plaintiff has shown that a constitutional violation occurred, and (2) whether the right was clearly established at the time of the violation. *See id.* (citing *Siberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). Courts have discretion in deciding which of the two prongs to address first. *Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 567–68 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236).

Defendants do not assert that no constitutional violation occurred, and the Court notes that "[a]n individual's right not to have her real property confiscated by governmental officials for reasons that lack any rational connection to a plausible conception of the public interest has been clearly established for a very long time now." *Montgomery*, 226 F.3d at 771 (citing *Madisonville Traction Co. v. St. Bernard Mining Co.*, 196 U.S. 239, 251–52 (1905) (holding that "[i]t is fundamental in American jurisprudence that private property cannot be taken by the government, national or state, except for purposes which are of a public character")). Deputy Palmer instead argues that he acted reasonably. More specifically, he asserts that he relied on the Perry County engineer's statement that the "opening of Saltlick Township Road 221 was approved[,]" and "[r]eliance on a county engineer is not so objectively unreasonable that Deputy Palmer should be deprived of his qualified immunity." (Doc. 27 at 8). Plaintiffs respond that "no reasonable officer" would have taken the following actions: (1) "allow[] trespassers to occupy private land against the will of the property owner and tak[e] the land for private use"; (2) "l[ie] to Plaintiffs about the legality of the trespass and continue to threaten Mr. Friend with arrest if he interfered with the

trespassers"; and (3) "falsely [tell] Friend that the road had been approved by the Perry County Engineer and that a bond had been posted by the private trespassers." (Doc. 32 at 8).

At the risk of wearing it out, the Court again turns to the Sixth Circuit's decision in *Montgomery*. There, the Court concluded that the government officials were not entitled to qualified immunity at the summary judgment stage because "it is inconceivable that reasonable public officials would not know that they are prohibited from taking privately owned real property for the sole purpose of giving the owner's neighbor the use of the property." *Id.* at 771. The Court went on to say, "[A] reasonable trier of fact could conclude that the county defendants knew that the driveway was the property of [Plaintiff] and not a county road, but simply refused to give it back for a reason that has no connection however tenuous to some at least minimally plausible conception of the public interest." *Id.* (citation and quotation marks omitted). Like in that case, Plaintiffs here may be able to show Deputy Palmer's actions were unreasonable based on what he knew or should have known.

Further, the procedural posture here is even more compelling for Plaintiffs than it was in *Montgomery*—we are not yet to summary judgment, and discovery is not complete. And, although the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 232, the Sixth Circuit has clarified that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (noting that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*"

13

(emphasis in original)).  For these reasons, it is premature to conclude that qualified immunity shields Deputy Palmer from suit, and Defendants' Motion to Dismiss is **DENIED** as to him.

## IV. CONCLUSION

Based upon the foregoing, Defendants' Motion to Dismiss Plaintiffs' claims (Doc. 27) is **GRANTED IN PART AND DENIED IN PART**.  The Court **GRANTS** Defendants' Motion to Dismiss as to Defendant Sheriff Barker and **DENIES** Defendants' Motion to Dismiss as to Deputy Palmer.

IT IS SO ORDERED.


Date: September 11, 2018            /s/Kimberly A. Jolson
                                    KIMBERLY A. JOLSON
                                    UNITED STATES MAGISTRATE JUDGE