# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JEFFREY FRIEND, et al.,**

        **Plaintiffs,**

    **v.**

                             **Case No. 2:18-cv-00198-KAJ**
                             **Magistrate Judge Kimberly A. Jolson**

**NEW LEXINGTON TREE FARM, LLC,**
**et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docs. 15–16, 52), is before the Court on Defendant Saltlick Township Trustees' Motion for Summary Judgment. (Doc. 90). For the reasons that follow, the Motion is **DENIED**.

## I.    BACKGROUND

This dispute is over land. Plaintiffs Jeffrey and Amy Friend live outside of Columbus in Grove City but own twenty-four acres of property in Saltlick Township, Perry County, Ohio. (Doc. 102 9:9–25). The property has been in Mr. Friend's family for over 100 years, and he visits the property often to hike, birdwatch, and hunt. (*Id.*, 17:1–9, 135:1–4, Doc. 100-1, ¶ 3; Doc. 102, 21:13–22:2, 100-1, ¶ 4).

Like most weekdays, Mr. Friend was working in Columbus on October 4, 2017. But he received an unexpected call from one of his Perry County neighbors. The neighbor reported that a group of men were on Mr. Friend's property with a bulldozer. (Doc. 100-1, ¶ 7). Mr. Friend called the Perry County Sheriff's Office to report the incident and then hastily left work to travel

to Perry County. (*Id.*; Doc. 102, 69:6–17). While Mr. Friend was en route, Deputy Cody Palmer called him. Mr. Friend testified that Deputy Palmer informed him during this conversation that what was happening on Plaintiffs' property "was a civil matter" and, if Mr. Friend tried to stop the construction, he would be arrested. (Doc. 102, 93:3–8).

When Mr. Friend arrived at his property, he saw that it had been marked with flags, and Deputy Palmer was on site. (*Id.*, 69–70:25). Mr. Friend testified that Deputy Palmer again told him not to interfere because the county engineer had approved the construction. (*Id.*, 74:8–14, 80:4–8). Lenn Adams, who works for Defendant Ohio Mulch Supply, Inc. ("Ohio Mulch"), was there, too. In 2010, the Friends and Ohio Mulch became neighbors of sorts when Jim Weber, the former president of Ohio Mulch, and New Lexington Tree Farm, LLC, purchased roughly 1,000 acres of land to the north of Plaintiffs' property. (Doc. 102, 57:11–22; Doc. 99-1, 13:9–14:15). New Lexington Tree Farm ("NLTF") has no employees and serves simply as a holding entity for the property. (Doc. 99-1, 13:9–14:3, 22:4–9). Ohio Mulch is a landscape supply company with 25 locations and production facilities throughout the country.

Mr. Friend testified that Mr. Adams told him that the Saltlick Township Trustees (the "Trustees") and the county engineer gave Ohio Mulch permission to build a road. (Doc. 102, 75:3–6). According to Mr. Friend's testimony, Mr. Adams explained how Ohio Mulch came to be there that day with a bulldozer: Surveyor Kevin Cannon surveyed the property and determined that a preexisting public road, Township Road 221, once ran north and south through Plaintiffs' property. (*Id.*, 76:23–77:11). Mr. Cannon was also at the scene. And Mr. Friend recalls Mr. Cannon telling him that he "guessed" and then flagged the location of Township Road 221. (*Id.*, 77:5–11; 132:8–12; Doc. 97, 111:10–19). Incredulous, Mr. Friend demanded proof of Township approval. (Doc. 102, 78:10–11). To satisfy Mr. Friend, Mr. Adams drove to Saltlick Township

Trustee James Denny's house and brought him to the property. (*Id.*, 78:12–14). Mr. Friend testified that Mr. Denny approved the construction. (Doc. 102, 78:17–24). At that point, Ohio Mulch employees cleared trees from the property and paved the road ("the Road") that is the basis for this lawsuit. (Doc. 99-1, 31:18–24).

Plaintiffs filed the instant lawsuit against Defendants NLTF, Ohio Mulch, Perry County Sheriff William Barker (in his official capacity), Deputy Cody Palmer (in his personal capacity), and Saltlick Township Trustees ("the Township"). (Doc. 19). The Court dismissed Sheriff Barker from the lawsuit on September 11, 2018, and dismissed two of Plaintiffs' state law claims roughly three months later. (Doc. 60). The parties then engaged in discovery as well as settlement discussions. Plaintiffs settled first with Deputy Palmer, on May 23, 2019, (Doc. 86), and are currently finalizing their settlement with NLTF and Ohio Mulch, (Doc. 114).

Only Plaintiffs' claims against the Township remain. These claims include: a § 1983 claim for a violation of their Fifth Amendment rights (Count I), a § 1983 claim for a violation of their Fourteenth Amendment substantive due process rights (Count II), a § 1983 claim for a violation of their Fourteenth Amendment procedural due process rights (Count III); a claim for declaratory judgment under 28 U.S.C. § 2201 (Count XI), and a claim for declaratory judgment under 28 U.S.C. § 2721.02 (Count XII). The Township has moved for summary judgment on all claims, and the motion is ripe for review. (*See* Docs. 90, 100, 111).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.    DISCUSSION

Up front, the Court must address one of the Township's central arguments. It repeatedly emphasizes that Plaintiffs' claimed harm is not simply the building of a road. Instead, the Township explains Plaintiffs' alleged harm as the building of a road where none had previously existed under the guise of it being Township Road 221. (*See, e.g.*, Doc. 90 at viii, 6, 10–11; *see also* Doc. 111 at 2, 18). The Township draws this distinction to make alternative arguments. First, the Township argues that if the Road is in fact Township Road 221, then, at most, the Trustees approved maintenance on one of its roads—and the Township had every right to do so. (*See, e.g.*, Doc. 90 at 1, 10–11; 18; *see also* Doc. 111 at 2, 8–9, 14–16, 23–25). Alternatively, if the Road turns out to be Plaintiffs' property (and not Township Road 221), then there was no taking because, in that scenario, a private entity built a road on private property. (*See, e.g.*, Doc. 90 at 1, 11, 14; *see also* Doc. 111 at 2, 24).

Whether this argument is the result of an overly narrow reading of the Complaint or simply clever lawyering, the Township has misconstrued the nature of Plaintiffs' claimed harm. The heart

of Plaintiffs' alleged constitutional injury is the Township's taking of private property for a purely private purpose. (*See generally* Doc. 19). Any attempt to whittle down that harm is unpersuasive. As explained below, the record is inconsistent as to both the location of Township Road 221 and the Township's involvement in the construction. In disclaiming involvement with the Road's construction, while at the same time asserting that the Road is its property, the Township has not clarified matters in its favor. To the contrary, the Township's arguments confirm that important factual disputes remain.

Shifting to its more substantive legal arguments, the Township makes two primary arguments in support of summary judgment: (1) There was no "government action" for which it could be held liable under 42 U.S.C. § 1983; and (2) Plaintiffs have no property interest in the Road because it is a Township Road. (*See generally* Doc. 90). According to the Township therefore, Plaintiffs' takings and due process claims cannot withstand summary judgment. (*See id*.). The Court will first address, as a threshold matter, municipal liability under § 1983 before turning to the merits of Plaintiffs' constitutional claims.

### A. Municipal Liability

"Section 1983 does not itself create any constitutional rights," rather it creates an avenue to pursue independent constitutional guarantees. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990). To state a claim under § 1983, a plaintiff must set forth facts that establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citation omitted).

When the government actor is a municipality, like the Township in this case, a plaintiff must show even more. First, the plaintiff must demonstrate that the injury suffered was a direct

result of the municipality's official policy or custom. *Monell v. Dep't of So. Servs. of New York*, 436 U.S. 658, 694–95 (1978). In other words, a municipality cannot be held liable for the constitutional torts of its employees on a theory of *respondeat superior*. *Id.* at 691. But a policy or custom need not always be formal or written to be official. In certain circumstances, where a municipal policymaker's "edicts or acts may fairly be said to represent official policy," *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (quotation marks and citation omitted), "a single decision" by that policymaker may bind the municipality, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Next, a plaintiff must also show causation. To do so, the record must reflect an "affirmative link" between the municipal policy and the alleged constitutional violation such that the municipal policy was "the moving force" behind the alleged violation. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (quotation marks and citation omitted).

Applying the above standard here, the Court's inquiry is twofold. It must first determine whether Plaintiffs have identified either a Township policy/custom or a Township policymaker, and if so, whether a reasonable juror could find that such a policy or policymaker caused Plaintiffs' alleged constitutional violation.

### i. Official Policy/Custom/Final Policymaker

The Township's argument is simple. It insists it had nothing to do with the Road's construction and that Ohio Mulch performed the work on its own and for its "own benefit." (Doc. 90 at viii.). Put simply, its theory is that, because a private entity constructed the Road, the Township cannot be held liable under § 1983.

In response, Plaintiffs make three primary arguments: first, the Township has an official policy with respect to its roads; second, Township Trustees are final policymakers; and third, in

failing to investigate the work done on the Road, the Trustees ratified the Township's unconstitutional conduct. (Doc. 100 at 7–13).

### 1. Official Policy/Custom

First, Plaintiffs assert that the Township's official policy is that "the Driveway is Saltlick Township Road 221." (Doc. 100 at 7–10). This argument reflects a misunderstanding of the meaning of "official policy" for purposes of § 1983 liability. There is no doubt that the Township has official policies regarding its roads and that, with those policies, come corresponding responsibilities. But to succeed on an official policy/custom claim, Plaintiffs must identify either "an unconstitutional decision of a legislative body," *Sweat v. Butler*, 90 F. Supp. 3d 773, 780 (W.D. Tenn. 2015), or a "relevant practice" that "is so widespread as to have the force of law," *Ford*, 535 F.3d at 495–96 (quotation marks and citation omitted). Plaintiffs have not done this. Instead, they simply rely on the Township's general duty to maintain its roads. (*See, e.g.*, Doc. 100 at 8–9 (explaining that Ohio law requires Township Trustees to maintain and control Township roads "from which springs a constellation of duties[.]"); *see also id.* at 10 ("[I]t is the policy of the Township that the Ohio Mulch-built Driveway is a now-open public township road, one which the Trustees at all times had a duty to maintain.")).

But without identifying the "existence of an illegal official policy or legislative enactment," *Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 771 (S.D. Ohio 2017), *aff'd in part, appeal dismissed in part sub nom. Stillwagon v. City of Delaware, Ohio*, 747 F. App'x 361 (6th Cir. 2018), or a "relevant practice" that "is so widespread as to have the force of law," *Ford*, 353 F.3d at 495–96, Plaintiffs have failed to identify an official policy/custom for which the Township could be held liable.

## 2. *Final Policymaker*

Next, Plaintiffs assert that Township Trustees—namely James Denny—are final policymakers, and consequently, the Trustees' unconstitutional conduct binds the Township. (Doc. 100 at 11). Whether the Trustees have final policymaking authority is a legal question for the Court. *See Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 801 (S.D. Ohio 2018) (explaining that, "[g]enerally, identifying a policymaking official is a question of law for the court to decide, not one of fact to be submitted to a jury").

The Township emphasizes that individual Trustees do not have final policymaking authority because no official action can occur without the Board's "collective action." (Doc. 90 at 12). "Collective action," according to the Township, occurs only through a vote "at a regular meeting" that is attended by "a majority" of the Trustees. (*See id.*; Doc. 111 at 10–13). It appears, therefore, that the Township is suggesting that, absent an official meeting and vote, it can never be held liable for its Trustees' actions—including those related to Township roads—despite recognizing that the Trustees are the ones responsible for maintaining those roads. (*See* Doc. 90 at 11 (citing the Township's statutory duty to maintain roads)). But if it were this cut and dry, the Township could presumably escape liability by avoiding formal meetings or votes altogether. The law does not allow such an outcome. Rather, the law requires the Court to assess the bigger picture and decide whether the Trustees' actions "may fairly be said to represent official policy." *Ford*, 535 F.3d at 495.

The Sixth Circuit's decision in *Paeth v. Worth Township*, provides guidance here. 483 F. App'x 956, 964–65 (6th Cir. 2012). In that case, plaintiff homeowners sued Worth Township, claiming, in relevant part, that while renovating their home, the Township violated their constitutional rights when its zoning administrator posted a "stop work" order on their property

without notice. *Id*. at 960. When considering municipal liability under § 1983, the Court faced a question similar to the one presented here: whether the Township's zoning administrator's actions could bind the Township. *Id*. at 964. The Court concluded that the Township could be found liable. *Id*. In so holding, the Court explained that the zoning administrator "was operating under the instructions of" a member of the Township Board, and "with the knowledge of another member of the Board . . . who did nothing to stop the action." *Id*. According to the Court, "Township Board members are officials high enough in the municipality that their actions, . . . 'may fairly be said to represent official policy.'" *Id*. at 964–65 (quoting *Ford*, 535 F.3d at 495).

The same is true here. James Denny, whom Plaintiffs allege authorized Ohio Mulch to construct the Road, is the elected President of the Board of Trustees. (Doc. 95-1, 12:18). For the past 16 years, he has regularly traveled Saltlick Township roads to inspect their condition. (*Id*., 17:6–8). And, according to Mr. Denny, the Trustees are tasked with deciding when a road requires maintenance. (*Id*., 16:23–17:2; *see also* Doc. 90 at 11 (citing O.R.C. § 5535.01(C) ("The board of township trustees shall maintain all such roads within its township."))). So, the building or "opening" of a Township road falls squarely within the purview of the Trustees. And, their actions pertaining to Township roads "may fairly be said to represent official policy," *Ford*, 535 F.3d at 495, and may bind the Township with respect to such matters. *E.g.*, *Paeth*, 483 F. App'x at 964–65; *see also Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 762 (E.D. Mich. 2013) (finding that board of trustees possessed final authority to grant or deny plaintiff's rezoning application, and as such, was the "policymaking body within the Township with respect to such matters.") (citation omitted).

### 3. *Ratification*

Briefly, Plaintiffs also assert that the Trustees "ratified" the Township's unconstitutional conduct "by their failure to investigate" the Road. (Doc. 100 at 11–13). In support, they again rely on the Trustees' duty to maintain roads. (*See, e.g.*, *id.* at 13 ("Its failure to investigate or account for how a Driveway built in its name and under its authority is a breach of its statutory and constitutional duties.")). But this Circuit's law on ratification does not encompass Plaintiffs' theory.

"The theory underlying [failure to investigate/ratification] cases is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct." *Skovgard v. Pedro*, No. 3:08CV071, 2010 WL 546368, at *16 (S.D. Ohio Feb. 10, 2010), *aff'd*, 448 F. App'x 538 (6th Cir. 2011) (quotation marks and citations omitted). The Sixth Circuit's "two seminal cases" addressing this theory of liability concern serious incidents involving prison officials' failure to protect the health and safety of prisoners. *See id.* at *17 (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989); *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985)).

Here, on the other hand, Plaintiffs' theory is that the Trustees had a "duty" to investigate the work done on the Road and were required to either disclaim the Township's interest in the Road or follow proper procedure by creating formal records for the Road. (Doc. 100 at 12–13). In failing to do so, Plaintiffs assert that the Township "breach[ed] [] its statutory and constitutional duties." (*Id.* at 21). Plaintiffs' theory, however, strays far from this Circuit's law concerning failure to investigate and ratification claims, and Plaintiffs provide no supporting authority that would justify expanding the law here.

In sum, while Plaintiffs' official policy/custom and ratification theories do not survive summary judgment, the Township Trustees are final policymakers with regard to Township roads and may be held liable for unconstitutional conduct with respect to such matters.

## ii. Causation

Whether the Trustees, as final policymakers, caused Plaintiffs' alleged constitutional violation is a separate matter. Indeed, for a final policymaker to come within § 1983's reach, a plaintiff must show that the policymaker's actions were the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694.

In arguing against causation, the Township reiterates a central message of its Motion—that it did not construct the Road. It wipes its hands clean, arguing that Ohio Mulch "was the 'direct causal link' and the 'moving force' behind the" construction. (Doc. 90 at 8 (citation omitted)). But the record contains conflicting evidence as to the extent of the Township's involvement.

To start, James Weber testified in his Rule 30(b)(6) capacity that one of his employees, Lenn Adams, met with surveyor Kevin Cannon and Trustees Ken Lucas and James Denny, to "ask[] permission" to "open" the Road.[1] (Doc. 99-1, 72:5–73:16). According to Mr. Weber's testimony, Mr. Adams did this "to clarify exactly" the location of Township Road 221 in relation to Plaintiffs' property and the intersecting road. (*Id.*, 45:2–46:4). Mr. Adams and Mr. Denny then went to Plaintiffs' property but were unable to determine the road's exact location. (Doc. 99-1, 65:11–66:3). Given the uncertainty, the county engineer's office recommended surveying the property. (*Id.*, 66:1–3; 73:21–22). Ohio Mulch, abiding by this recommendation, hired Mr. Cannon to survey the property and locate Township Road 221. (*Id.*, 66:5–6). Mr. Cannon did not prepare a formal survey but instead "marked" the property with flags. (*See id.*, 75:14–76:1). Mr.

---

[1] Mr. Denny denies that this meeting ever took place. (Doc. 95-1, 27:20–28:5).

Weber testified that, from his perspective, Ohio Mulch followed "proper procedure" before beginning construction. (*Id.*, 167:2–11).

Anticipating that Plaintiffs would rely on Mr. Weber's testimony, the Township asserts that it is inadmissible hearsay and may not be considered. (Doc. 90 at 9). The Court rejects this argument for several reasons.

First, Mr. Weber's employee, Mr. Adams, would presumably be available to testify at trial about his meeting with the Trustees. *See, e.g.*, *United States v. Two Hundred Twenty Thousand Two Hundred Dollars ($220,200.00) in U.S. Currency*, No. 1:10-CV-404-HJW, 2013 WL 146350, at *6 (S.D. Ohio Jan. 14, 2013) (herein after "*$220,200.00 in U.S. Currency*") (considering hearsay evidence because it was likely to be admissible at trial).

Second, much of Mr. Weber's relevant testimony is not hearsay. For example, Mr. Weber testified that Ohio Mulch, per the Trustees' recommendation, hired Mr. Cannon to survey the property and locate Township Road 221. (Doc. 99-1, 66:5–6; 75:21–76:1). He also testified that he believed his company had permission to perform the work. (*See, e.g., id.*, 85:5–7 (stating that "Saltlick Township trustees gave Ohio Mulch permission to grade it and maintain it"); *id.*, 97:14–15 (stating the same); *id.*, 98:4–6 ("If the township came to us and said, no, we don't want you to do the work, then we would not have done it."); *id.*, 117: 19–22 ("If Saltlick Township came to us and said put the road back –you know, maintain the road or remove the road, we would do what they wanted to."); *id.*, 167:2–11 ("I don't know all the procedures that the township uses as far as deciding or not deciding [whether to work on the Road]. We followed the proper—what we thought was proper procedure, which was to reach out to the township and to seek permission of the township trustees. If one of the trustees said there's a different procedure that you need to follow, we would have followed it. We thought we were following the proper steps. We went the

extra mile to make sure that this was correct.")). None of this testimony is hearsay and may be considered in deciding whether factual issues preclude summary judgment.

Beyond Mr. Weber's testimony, the record elsewhere reflects the Township's involvement with the construction. A few examples will suffice. Mr. Friend and Mr. Cannon both testified that Mr. Denny was present before and during the construction. (Doc. 102, 67:23; Doc. 97, 115:24–25). Mr. Friend corroborated Mr. Weber's testimony that the Road had been marked prior to the construction. (*Id*., 70:20). And, Mr. Friend recounted his memory of the day of the construction, including asking the Trustees for proper documentation of Township approval. (*See id*. 78:5–11).

Based on the above evidence, a juror could draw the reasonable inference that the Trustees gave Ohio Mulch permission to construct the Road on Plaintiffs' property. From that inference, a juror could also reasonably conclude that the Trustees' actions were the moving force behind the alleged taking. *See Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 923 (M.D. Tenn. 2016) (denying summary judgment in § 1983 case, in part because there was "sufficient evidence from which a jury could conclude" causation).

At base, the Court must find that Plaintiffs "'can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that trial is necessary.'" *$220,200.00 in U.S. Currency*, 2013 WL 146350, at *6 (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)). The evidence here meets that standard, and it demonstrates a genuine issue of material fact regarding causation.

### B. Unconstitutional Taking

The Court turns now from the issue of § 1983 liability to the merits of Plaintiffs' constitutional claims, starting with their Takings Clause challenge.

The Fifth Amendment Takings Clause "states that private property shall not be taken for public use, without just compensation." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167, 204 L. Ed. 2d 558 (2019) (quotation marks, citation, and alteration omitted). Takings Clause claims fall into one of two categories: (1) challenges to the just-compensation requirement ("just compensation claims"); and (2) challenges to the public-use requirement ("private takings claims"). *See Wilkins v. Daniels*, 744 F.3d 409, 417–18 (6th Cir. 2014) (noting that "[i]t is important at the outset to distinguish" the "two different types of Takings Clause challenges"). While claims arising under the first category are far more common, Plaintiffs in this case allege that there is no public use for the Road and have therefore brought a private takings claim. (*See* Doc. 19, ¶ 48).

To show a private taking, a plaintiff must prove that the government took his or her property to benefit a private party and that there was "no appreciable use or benefit" conferred on the public. *Henry v. City of Middletown, Ohio*, 655 F. App'x 451, 464 (6th Cir. 2016). Private takings are "unconstitutional" as a matter of law, "regardless of whether just compensation is paid." *Montgomery v. Carter Cty., Tennessee*, 226 F.3d 758, 765 (6th Cir. 2000). The government's burden to defeat a private takings claim is slight—requiring only that the taking has a "rational relationship to some conceivable public purpose." *Id.* (quotation marks and citation omitted). "Very few takings will fail to satisfy that standard." *Id.* at 765–66.

The facts in *Montgomery*, which the Court has previously discussed (Doc. 42), presented a "rare real-life example" of a private takings claim. *Id.* at 765. The plaintiff in that case alleged that the county designated her driveway as a public road so that mail could be delivered to a neighboring home. *Id.* at 763. Because the government did not articulate any public purpose for

the taking but instead asserted that it "actually [o]wned" the driveway, the Court found that the plaintiff's private takings claim could withstand summary judgment. *See id*. at 766, 773.

Like in *Montgomery*, the Township here does not put forth any public purpose—let alone a "minimally plausible" one—for the construction of the Road. *Id*. at 763. To the contrary, the Township acknowledges that Ohio Mulch constructed the Road for a private purpose. (*See* Doc. 90 at 7 ("Ohio Mulch's actions . . . were unauthorized and self-interested. Ohio Mulch unilaterally decided to perform work on Township Road 221. . . . Ohio Mulch's actions were taken for their sole benefit to gain access to their property.")).

So, rather than offering a public purpose for the taking, the Township instead contends that Plaintiffs do not have a property interest in the Road. (Doc. 90 at 14–15; *see also* Doc. 111 at 26). Obviously, this argument hinges on whether the Road in question is in fact Township Road 221. Yet, the snag for the Township is that the record is far from clear on this point. To start, the Township admits it "does not have any records relating to the location of Township Road 221 because its records were all destroyed in a fire several years ago." (Doc. 90 at 3 n.3). This absence of official Township records forces the Township to rely on deposition testimony and decades-old maps and surveys.

At the outset, the Township relies on expert testimony from surveyor Kevin Cannon's deposition. (Doc. 90 at 17 (citing Doc. 97)). Mr. Cannon testified that, in 2017, Ohio Mulch contacted him to survey the property and locate Township Road 221. (Doc. 97, 90:8–91:2). Mr. Cannon did not prepare a formal survey but rather "flagg[ed]" the Road. (*Id*., 126:6). While on the property, Mr. Cannon found "scar" from the "old dirt roadbed," along with barbed wire in the trees lining the road, both of which, according to Mr. Cannon, are typical of old, abandoned roads. (*Id*., 110:3–21). Based on his findings, Mr. Cannon testified that he was "99% sure" that the road

in question is Township Road 221.  (*Id*., 122:14–15).  There are no photographs from Mr. Cannon's 2017 survey of the property.  (*Id*., 107:17– 22).

But that was not the first time Mr. Cannon surveyed the property.  In 2006, the previous owner of Ohio Mulch and NLTF's property, Chuck Owen, (*id*., 88:14–24), hired Mr. Cannon to survey the property and "asked [him] to see if the road that he pointed out was [Township Road 221]."  (*Id*., 126:9–13).  Mr. Cannon located Township Road 221 as "way west" of Plaintiffs' property.  (*Id*., 86:2–11).  He then publicly filed this survey with the county engineers' office.  (*Id*., 71:13–15; *see also* Doc. 97-4).  According to his testimony, "a few days" after filing the survey, Mr. Cannon spoke with Jerry McTeague, from the Perry County Engineers' Office, to whom Mr. Cannon refers as the "road guy," and who is now deceased.  (Doc. 97, 67:12–69:24).  Mr. McTeague told Mr. Cannon that his survey of Township Road 221 was inaccurate.  (*Id*., 67:14–21).  After learning this, Mr. Cannon testified that he asked Mr. Owen if he "wanted [him] to locate [the Township Road]," but that Mr. Owen said no.  (*Id*., 67:20–24).  Mr. Cannon testified that he "never corrected" the survey with the engineer's office.  (*Id*., 78:3).  And, when asked why not, he responded that "Chuck [Owen] did not want to pursue it."  (*Id*., 78:4–7).  Mr. Cannon also testified that, when Ohio Mulch reached out to him in 2017 to survey the property, he did not refer to his 2006 survey because he did not "think it was necessary."  (*Id*., 93:19–94:6).

The Township also relies on a 1946 tax map, which purportedly shows Township Road 221 running through what is now Plaintiffs' property, as well as deposition testimony regarding that map from Plaintiffs' expert, Mr. McFarland.  (Doc. 90 at 16 (citing Doc. 90 at 39; Doc. 104, 78:20–79:5, 80:19–81:2)).  But this map long predates Mr. Cannon's 2006 publicly filed survey, and Mr. McFarland testified that some subsequent tax maps do not depict Township Road 221 on Plaintiffs' property.  (Doc. 104, 109:5–11, 109:20–111:8).  Furthermore, Mr. McFarland, whose

methods the Township attacks, opined in his report that he found no physical evidence of any road running through the property. (Doc. 104, 18:11–16; Doc. 113-6).

Finally, the Township insists that, because it never "formally vacated" Township Road 221, as required under Ohio law, Plaintiffs do not have a property interest in the Road. (Doc. 90 at 17–19). But again, this argument relies on a finding that the Road is in fact Township Road 221. And that is just not clear from the record.

Based on the above, the Court concludes there are genuine issues of material fact regarding the location of Township Road 221. A jury is in the best position to resolve the record's factual inconsistencies and to test the credibility of witness testimony. Summary judgment on Plaintiffs' takings claim is denied.

### C. Procedural Due Process

Next, the Township moves for summary judgment on Plaintiffs' procedural due process claim. (Doc. 90 at 19–20). "Procedural due process 'is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property.'" *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 657 (S.D. Ohio 2016) (internal quotation marks omitted) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). To establish a procedural due process violation, a plaintiff must show: (1) a constitutionally protected life, liberty, or property interest; (2) the deprivation of this protected interest; and (3) that the state did not provide adequate process. *See id.* (citation omitted).

In its Motion, the Township reiterates its main two arguments: (1) that there was no government action for purposes of § 1983 liability; and (2) that Plaintiffs do not have a property interest in the Road. (*See* Doc. 90 at 19–20). The Court makes short work of these arguments.

As for the first, the Court has already concluded, as a legal matter, that Township Trustees are final policymakers with regard to Township roads. (*See supra* at 8–9). And, regarding the second, the Court has already found that there are significant factual issues surrounding the location of Township Road 221 and Plaintiffs' property interest in the Road. (*See supra* at 15–17). As such, Plaintiffs may proceed with their procedural due process claims.

### D. Substantive Due Process

The Township also takes issue with Plaintiffs' substantive due process claims. (Doc. 90 at 20–21). It treads familiar ground in arguing that summary judgment is warranted because there was no government action and Plaintiffs have no property interest. (*Id*. at 20). But the jury will decide those factual disputes. (*See supra* at 8–9;15–17). The Township next argues that, because the Fifth Amendment Takings Clause "specifically addresses the exact conduct alleged by Plaintiffs," Plaintiffs may not simply "restate[]" their takings claim in a separate substantive due process claim. (Doc. 90 at 21). Said plainly, the Township argues that Plaintiffs' takings claim subsumes its substantive due process claim, and Plaintiffs cannot have both.

Generally speaking, there are "two separate types of substantive due process" claims under the Fourteenth Amendment. *Bettio v. Vill. of Northfield*, 775 F. Supp. 1545, 1554 (N.D. Ohio 1991) (citation omitted). The first "encompasses claims based on a right, privilege, or immunity secured by the Constitution or federal laws." *Id*. (quotation marks and citation omitted). And the second "includes allegations of official acts which may not take place no matter what procedural protections accompany them." *Id*. (quotation marks and citation omitted). Claims in the latter category are often referred to as "shocks the conscience" claims, but in cases involving the deprivation of physical property, courts generally ask whether the government's actions were "arbitrary and capricious." *EJS Props.*, 698 F.3d at 862.

If Plaintiffs' claims fell within the first category, they would be subject to the limiting principle raised by the Township. As a general rule, "substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged[.]" *Warren v. City of Athens, Ohio*, 411 F.3d 697, 706–07 (6th Cir. 2005). Here, the Fifth Amendment Takings Clause directly addresses Plaintiffs' constitutional harm. Plaintiffs may not repackage their takings claim as a separate substantive due process claim. *See, e.g.*, *Keymarket of Ohio, LLC v. Keller*, No. 2:08-CV-325, 2013 WL 6000922, at *6 (S.D. Ohio Nov. 12, 2013) ("To the extent that Plaintiff argues that its interest in the property is protected by a specific constitutional guarantee, the right implicated would be the Fifth Amendment's Takings clause, which prohibits the government from taking private property without just compensation.") (quotation marks and citations omitted).

But, as noted, there is another avenue by which a plaintiff may pursue a substantive due process violation—a claim that the government's actions were arbitrary and capricious. *See Keymarket of Ohio, LLC*, 2013 WL 6000922, at *7–8 (noting that, in addition to asserting that they were deprived a constitutionally guaranteed right, plaintiffs could also pursue a "shocks the conscience" substantive due process claim); *see also Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 249 (5th Cir. 2000) (holding that "the invention of a park solely to deny private property holders lawful access to an abutting street is an abuse of governmental power, which on this peculiar factual foundation rises to the level of a substantive due process violation"); *Rubie v. Mayor & City Council of Baltimore*, No. CIV S-01-1303, 2003 WL 25575661, at *6 (D. Md. Jan. 28, 2003) ("At least when plaintiffs claim that the state has taken their property for no legitimate purpose, an independent substantive due process claim may lie.").

Plaintiffs have pursued this avenue here.  They claim that, in addition to the "encumbrance" of their property, the Township "engaged in outrageous conduct by authorizing the no-notice, no survey invasion and destruction of the Plaintiffs' land, or at best the ratification of the same, all for the private use of a third party."  (Doc. 100 at 22–23; *see also* Doc. 19 at 10).

At this point, it is fair to say that the Township has backed itself into a corner.  Generally, in this type of case, the government states a legitimate interest for the taking, *see, e.g.*, *Warren*, 411 F.3d at 705 (rejecting private takings claim, in part, because the city's action "was rationally related to the conceivable public purposes of traffic, noise and accident control"), and the court defers to the claimed interest, *see Montgomery*, 226 F.3d at 765.  Yet again, the normal course is not what is before the Court, so it may not apply this deferential standard.  Indeed, how could it?  There is nothing in the record suggesting that the Township acted for a public purpose.  And, more importantly, despite claiming the Road as its own, the Township takes no responsibility for the construction.  *See, e.g.*, *Simi*, 236 F.3d at 254 (finding that, because "the County failed to put forth any alternative rational basis for the continued interference with private property rights," the "County acted arbitrarily and without a legitimate governmental purpose").

Absent a stated governmental interest, and without a clear picture of the events that took place, a jury must first untangle the facts of this case.  Then, the Court, as a matter of law, may determine whether the Township's actions were arbitrary and capricious.  *See Fetterman v. Westmoreland Cty. Children's Bureau*, No. 2:15-CV-773, 2015 WL 5007952, at *6 (W.D. Pa. Aug. 20, 2015).  But, for now, Plaintiffs' substantive due process claim may proceed.

### E. Damages

In the Township's final attempt, it argues that Plaintiffs are unable to prove damages. Specifically, it contends that Plaintiffs' expert, Mr. Smith, is not qualified to opine on diminution or restoration values related to tree removal. (*See* Doc. 90 at 21–26).

Plaintiffs respond that they used their "tree expert" for only one purpose—to pursue their tort claims against Ohio Mulch. (Doc. 100 at 26). That claim has nearly settled. (*See* Doc. 114). As for damages brought against the Township, Plaintiffs seek compensable damages for the fair market value of the property at the time of trial. (Doc. 100 at 26). Plaintiffs maintain that an expert is not needed because, as the owners of the property, they are "competent" to testify about the value of the land taken. (*Id.*). The Township resists this argument, too. It asserts that the Federal Rules of Evidence preclude lay opinion testimony when it is expert in nature. (Doc. 111 at 30 (citing Fed. R. Evid. 701)).

Rule 701 of the Federal Rules of Evidence governs lay opinion testimony and grants district courts "broad discretion" to make decisions. *Heritage Mut. Ins. Co. v. Reck*, 127 F. App'x 194, 199 (6th Cir. 2005). The Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence seem to characterize "landowner testimony on value as being expert in nature." *Kechi Twp. v. Freightliner, LLC*, 592 F. App'x 657, 675 (10th Cir. 2014) (quotation marks, citations, and alterations omitted). Yet, "in the appropriate case" and with "proper foundation," a landowner may testify as a lay witness under Rule 701. *Id.; see also Atsco Holdings Corp. v. Air Tool Serv. Co.*, No. 1:15CV1586, 2018 WL 7459257, at *1 (N.D. Ohio July 10, 2018) (noting that "lay testimony may be considered by the Court as to the value of property in certain circumstances").

When deciding whether to admit lay opinion testimony regarding property value, courts apply a facts and circumstances test. *See Kechi Twp.*, 592 F. App'x at 675. Relevant factors include the "complexity of the property right at stake" and "whether the valuations are based on straightforward, common sense calculations." *Id.* (quotation marks, citation, and alteration omitted); *see also United States v. Kerley*, 784 F.3d 327, 338 (6th Cir. 2015) ("Lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotation marks, citation, and alteration omitted).

The Tenth Circuit's decision in *Kechi Township v. Freightliner, LLC*, is useful here. There, the Court considered the district court's decision to exclude a property owner's lay witness testimony under Rule 701. 592 F. App'x at 672. A portion of the excluded testimony concerned "large, specialized, expensive" machinery, and it was readily apparent that the witness based his opinion regarding the value of the machines on his "specialized, technical professional experience working with them." *Id.* at 675. The Tenth Circuit easily affirmed the exclusion of that testimony. *See id.* On the other hand, the admissibility of testimony regarding the valuation of real estate "pose[d] a slightly closer question." *Id.* "Unlike the equipment," the real property was not "particularly complex," featuring only a metal pole barn with wooden rafters and an adjoining office. *Id.* The standard of review did the work, and the Tenth Circuit found that excluding the testimony did not "exceed[] the bounds of permissible choice in the circumstances." *Id.* (quotation marks and citation omitted).

Here, the Township does not argue that Plaintiffs' property value is especially "complex," or that Plaintiffs would form their opinion using specialized, technical, or professional knowledge. *See id.* at 765. So, the Court concludes that excluding the testimony now is unwarranted. Of

course, the Township may raise these arguments through pretrial motions or at trial. *See, e.g.*, *Atsco Holdings Corp.*, 2018 WL 7459257, at *1 ("reserv[ing] the right to make admissibility determinations at trial depending on the substance of, and foundation for, the proffered [lay] testimony").

Plus, a jury could conclude that Plaintiffs are entitled to declaratory relief. Indeed, Plaintiffs claim that their "primary relief sought" is "declaratory in nature." (Doc. 100 at 25–26). Specifically, Plaintiffs seek "a declaration that no public roads or easements run over their real property." (Doc. 19, ¶ 98). And, as Plaintiffs note, a jury could also award nominal damages or attorney's fees. In short, much is left to be resolved in this case, including the issue of relief, if any.

## IV.    CONCLUSION

Based on the foregoing, the Township's Motion for Summary Judgment (Doc. 90) is **DENIED**. Trial in this matter has been scheduled. (*See* Doc. 94). The parties shall meet and confer over the next 7 (seven) days and are **DIRECTED** to inform the Court whether they would like to pursue prompt mediation. If the parties choose not to pursue mediation, this matter will proceed pursuant to the schedule set forth in the Court's Scheduling Order. (*Id.*).

IT IS SO ORDERED.


Date:  September 5, 2019                           /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE